**UNITED STATES DISTRICT COURT**
**NORTHERN DISTRICT OF TEXAS**
**DALLAS DIVISION**

| | |
|---|---|
| UNITED STATES OF AMERICA | |
| v. | NO. 3:10-CR-093-M |
| THOMAS FRANCISCO HERRERA | |

**MEMORANDUM OPINION AND ORDER**

Before the Court is Defendant's Motion for Certification of Actual Innocence (ECF No. 112). For the reasons stated below, the Motion is **DENIED**.

**I.    BACKGROUND**

On May 26, 2010, the grand jury charged Defendant Thomas Francisco Herrera in a superseding indictment with two counts of bank robbery.[1] The first count charged Herrera with robbery of a Chase bank on November 10, 2009, in Farmers Branch, Texas. The second count charged him with robbery of a Wells Fargo bank on October 1, 2009, in Addison, Texas. Surveillance footage showed the following: on October 1, 2009, two Hispanic men entered the Addison Wells Fargo branch around 1:00 p.m.[2] One of the men was wearing glasses and a Boston Red Sox hat; he approached the teller, handed him a note, made a threat, and demanded money.[3] The teller gave the robber $1,400, and both men ran out of the bank.[4] On November 10, 2009, around 2:50 p.m., a Hispanic man wearing glasses and a Boston Red Sox hat entered the Chase branch in Farmers Branch and handed the teller a threatening note demanding money.[5] The teller gave the robber approximately $5,500, and the robber ran out of the bank.[6]

---

[1] ECF No. 21.
[2] ECF No. 70 at 213–15.
[3] *Id*. at 215–19.
[4] *Id*. at 217–20.
[5] *Id*. at 148–49.
[6] *Id*. at 151.

Farmers Branch Detective Larry Sandifer investigated the Farmers Branch robbery, and posted a photo of the robber on a police department bulletin board. In March 2010, Patrick McCray, a jailer at the Farmers Branch police department, said he recognized the man in the photo as Herrera. McCray knew him because Herrera had been at the jail several times for other crimes, including in November 2009 and January 2010. Detective Sandifer called Herrera's cousin, Lydia Marruffo, a Farmers Branch detention officer, and asked her to identify the man depicted in the Farmers Branch robbery photos and videos. She identified him as Herrera and so testified at trial. In addition, although they gave a range of estimates of the height and weight of the robber, three bank tellers identified Herrera as the robber and testified to that at trial.

Herrera went to trial in September 2010, with recently retired Judge Jorge Solis presiding. Herrera did not testify and called no witnesses. On September 9, 2010, the jury convicted him of both counts, and on January 5, 2011, Judge Solis sentenced him to sixty-four months imprisonment, with three years of supervised release.[7] On July 14, 2011, the Government sent Judge Solis and Herrera's attorneys a letter regarding a robbery of a Chase bank that occurred in Plano, Texas, on March 11, 2011.[8] The robber was a Hispanic male, wearing glasses and a Dallas Cowboys hat. The case agent believed there were strong similarities between the Plano robber and Herrera, but Herrera was in prison on March 11, 2011. On October 31, 2012, the Government informed Herrera's attorneys that Veronica Guzman had called Crime Stoppers, alleging she had information relating to the Farmers Branch robbery. She claimed that her boyfriend, Francisco Gonzales, and his cousin had confessed to committing the Farmers Branch robbery.

On July 10, 2013, Herrera filed a Motion for a New Trial, highlighting the similarities

---

[7] ECF No. 59.
[8] ECF No. 120 at 18–19.

between the Plano, Farmers Branch, and Addison robber, suggesting that Ms. Marruffo might change her testimony if shown photos from the Plano robbery, and describing Ms. Guzman's claims.[9] On February 27, 2014, Judge Solis held an evidentiary hearing on the Motion for a New Trial.[10]

On June 6, 2014, Judge Solis granted the Motion for New Trial, finding that Herrera would "probably" be acquitted in light of the new evidence.[11] He noted that none of the bank employees who identified Herrera gave a physical description of the bank robber that was consistent with Herrera's physical appearance. Rachel Holguin, the teller from the Farmers Branch robbery, described the robber as five foot six or seven inches tall and weighing between 120 and 130 pounds.[12] Cruz Meza, the teller from the Addison robbery, described the robber as five foot six inches and 160 pounds.[13] Louis Meyer, a teller from the Farmers Branch robbery, described the robber as five foot eight and 140 pounds.[14] Herrera is six foot one inch and weighs between 195 and 220 pounds.[15] Ms. Guzman had described her boyfriend as five foot one inch and weighing 180 pounds in her Crime Stoppers call. Judge Solis also cited Ms. Marruffo's new uncertainty about her trial identification of Herrera, stating,

> [t]he court found the trial testimony of Ms. Marruffo to be decisive…[because] Ms. Marruffo is related to Herrera and knows him personally. She identified him from pictures taken during the bank robberies and identified a cap worn by the bank robber as like a cap she gave to Herrera. She now does not believe she would identify Mr. Herrera as the person in the bank photos.[16]

The government then declined to go forward with a retrial because it concluded "that it

---

[9] ECF No. 87.
[10] ECF No. 118.
[11] ECF No. 97.
[12] ECF No. 70 at 148–149; *see also* ECF No. 97 at 1.
[13] ECF No. 70 at 228.
[14] ECF No. 70 at 186.
[15] *Id.* at 138; *see also* ECF No. 97 at 1.
[16] ECF No. 97 at 3.

likely would not be able to prove beyond a reasonable doubt that Herrera committed the robberies."[17] On July 25, 2014, the superseding indictment was dismissed.[18]

Herrera seeks to bring a claim under 28 U.S.C. § 1495, "for damages by any person unjustly convicted of an offense against the United States and imprisoned."[19] An innocent person previously imprisoned may recover up to $50,000 for each year incarcerated.[20]

## II.   LEGAL STANDARD

To recover from the government under 28 U.S.C. § 1495, a person seeking compensation must first obtain a certificate of innocence from the convicting court, and that is what Herrera seeks by the subject motion.[21] To obtain such certificate, the person must allege and prove that:

> 1) [h]is conviction has been reversed or set aside on the ground that he is not guilty of the offense of which if he was convicted, or on new trial or rehearing he was found not guilty of such offense, as appears from the record or certificate of the court setting aside or reversing such conviction, or that he has been pardoned upon the stated ground of innocence and unjust conviction, and 2) he did not commit any of the acts charged or his acts, deeds, or omissions in connection with such charge constituted no offense against the United States, or any State, Territory or the District of Columbia, and he did not by misconduct or neglect cause or bring about his own prosecution.[22]

The decision to grant or deny a certificate of innocence is within the discretion of the district court. *United States v. Graham*, 608 F.3d 164, 172 (4th Cir. 2010) (citing cases). The Fifth Circuit has noted that relief under 28 U.S.C. § 1495 is only available to a narrow class of individuals. In particular,

> [t]he claimant must be innocent of the particular charge and of any other crime or offense that any of his acts might constitute. The claimant cannot be one whose innocence is based on technical or procedural grounds, such as lack of sufficient evidence, or a faulty indictment—such cases as where the indictment may fail on

---

[17] ECF No. 119 at 22.
[18] ECF No. 108.
[19] 28 U.S.C. § 1495.
[20] 28 U.S.C. § 2513(e).
[21] 28 U.S.C. § 2513(b).
[22] 28 U.S.C. § 2513(a).

4

the original count but claimant may yet be guilty of another or minor offense. From the above…it will clearly appear that Congress never intended that every imprisoned person whose conviction has been set aside, should be indemnified by the Government. *Osborn v. United States*, 322 F.2d 835, 840 (5th Cir. 1963) (internal quotation marks omitted).

Although the Fifth Circuit has not addressed the appropriate standard for assessing whether or not a petitioner is entitled to an actual innocence certificate under 28 U.S.C. § 2513(a), the Sixth Circuit recently addressed the issue in *United States v. Grubbs*. 773 F.3d 726 (6th Cir. 2014). The *Grubbs* court held that "the person seeking the certificate bears the burden of proof," and "preponderance of the evidence is the appropriate standard to apply in proceedings for a certificate of innocence" because "that standard is the default rule for civil cases…[and] a request for a certificate of innocence is in essence a 'civil case.'" *Id.* at 732–33 (internal quotation marks omitted); *see also United States v. Lyons*, 726 F. Supp. 2d 1359, 1368 (M.D. Fla. 2010) (applying the preponderance of the evidence standard). This Court agrees with the Sixth Circuit's analysis with respect to the burden of proof, so Herrera bears the burden of proving by a preponderance of the evidence that he is entitled to a certificate of innocence.

### III.  ANALYSIS

To obtain a certification of innocence, a person seeking compensation must satisfy both prongs of 28 U.S.C. § 2513(a). The Government concedes Herrera has satisfied the first prong. For the sake of this ruling, the Court will assume the first prong is satisfied, although that is by no means certain. Herrera does not however meet the requirements of the second prong of § 2513(a), and his request for a certificate of actual innocence is denied.

   a. *Acquittal*

First, Herrera claims that Judge Solis declared him "innocent of the charged offenses."[23]

---

[23] ECF No. 112 at 7.

In fact, Judge Solis granted Herrera's Motion for a New Trial based on newly discovered evidence that Judge Solis opined "would probably produce an acquittal."[24] This means that given the new evidence, Judge Solis believed it likely a jury would find Herrera not guilty beyond a reasonable doubt. However, to prove his innocence under 28 U.S.C. § 2513(a), Herrera must do more than establish the probability that a jury will find a reasonable doubt about his guilt; he must prove he was not the person who committed the crimes of which he was convicted. Although the Government declined to go forward with a retrial, there is still substantial evidence implicating Herrera in the robberies. Nothing in Judge Solis' opinion granting a new trial constitutes a finding that Herrera is actually innocent of the charges.

      b. *Post-Conviction Physical Evidence*

Second, Herrera argues that post-conviction physical evidence, in particular new photographic and forensic evidence, demonstrates that he is actually innocent. The Plano robbery case agent stated there were "strong similarities between Herrera and the perpetrator of the Plano robbery," which Herrera could not have committed because he was in prison at the time it occurred.[25] The photographs of the Plano robber depicted a Hispanic male wearing glasses and a Dallas Cowboys hat, while the robberies of which Herrera was convicted were committed by a Hispanic male wearing glasses and a Boston Red Sox hat.[26] If the photographs from the Plano robbery depict the same person as shown in the Farmers Branch and Addison robberies, Herrera is actually innocent. However, the photographs are ambiguous; the Court has inspected them and

---

[24] Defendants seeking a new trial on the basis of newly discovered evidence under Federal Rule of Criminal Procedure 33(b) must establish: 1) that the evidence is newly discovered and was unknown at the time of trial; 2) the failure to detect the evidence was not due to a lack of diligence by the defendant; 3) the evidence is not merely cumulative or impeaching; 4) the evidence is material; and 5) the evidence if introduced at a new trial would probably produce an acquittal. *U.S. v. Wall*, 389 F.3d 457, 467 (5th Cir. 2004). The first four factors were not in dispute in Mr. Herrera's Motion for a New Trial.
[25] ECF No. 120 at 18–19.
[26] ECF No. 120 at 23–26.

6

they do not definitively depict the same person. If they did, that would eliminate the possibility that Herrera was the Farmers Branch and Addison robber. But Because the Plano photos do not do so, the Court does not find Herrera to be actually innocent.

New forensic evidence from the Plano robbery also does not support Herrera's claim of actual innocence. Fingerprints and palm prints were analyzed from each crime scene, but no matches were found, and none of the prints matched each other.[27] Thus, the Plano evidence does not exclude Mr. Herrera as the perpetrator of the Farmers Branch and Addison robberies.

    c. *New Testimony*

Third, Herrera argues the testimony at the hearing on the Motion for a New Trial proves he could not have committed the robberies in question. Herrera's attorneys called two witnesses at the hearing: Lydia Marruffo and Veronica Guzman.[28] At trial, Ms. Marruffo testified that Herrera was the man depicted in the pictures from the Farmers Branch and Addison robberies.[29] She also testified that the man videotaped in the Addison robbery walked like Herrera.[30] At the new trial hearing, Ms. Marruffo was unsure about her previous identification, and stated if she saw the photographs from the Plano robbery, she "definitely would have questioned more" whether Herrera was the Farmers Branch and Addison robber.[31] She said she did not think the Plano robber had Herrera's facial structure, but then indicated thereafter she could not give an unbiased opinion because she had been "ostracized from part of [her] family" after identifying Herrera.[32]

Ms. Guzman claimed her boyfriend, Francisco Gonzales, confessed that he and his cousin

---

[27] ECF No. 120 at 20, 29.
[28] ECF No. 118.
[29] ECF No. 120 at 9.
[30] ECF No. 70 at 202.
[31] ECF No. 118 at 29.
[32] *Id*. at 31–36.

committed the Farmers Branch robbery.[33] When Detective Sandifer showed Ms. Guzman photos from the three robberies, she said the Farmers Branch photos depicted Gonzales, and the Addison photos depicted Gonzales' cousin, but she could not identify the man who committed the Plano robbery.[34]

Neither Ms. Marruffo nor Ms. Guzman's testimony proves Herrera's innocence. Ms. Marruffo's testimony casts doubt over her original identification, but does not clear Herrera of the crimes of which he was convicted. She had no testimony to offer on his claim of innocence. Furthermore, Ms. Guzman's testimony about her boyfriend is inconsistent with other testimony and evidence. First, her testimony that two different men committed the Farmers Branch and Addison robberies is apparently contradicted by the photographic evidence. Both photographs depict a Hispanic man wearing glasses and the same Boston Red Sox hat. The robber as depicted in both photos appears to the Court likely to be the same person.

Next, Guzman testified that Gonzales' cousin was parked outside and that Gonzales got in a car to get away from the Farmers Branch robbery.[35] However, Louis Meyer, a bank employee who was near the teller during the Farmers Branch robbery, testified at trial that the robber sprinted across the parking lot to a fence that divides the bank's parking lot from an apartment community, and that he did not see any getaway vehicle.[36] There was no getaway vehicle in the surveillance footage. Ms. Guzman also testified that Gonzales used a gun during the robbery, but none of the tellers testified the robber had a gun, nor do any of the surveillance photos or videos show a gun.[37] In addition, on April 16, 2013, the Government compared

---

[33] *Id.* at 19.
[34] ECF No. 120 at 26–28.
[35] ECF No. 118 at 5.
[36] ECF No. 70 at 172.
[37] ECF No. 118 at 5.

Gonzales' fingerprints to those found at the Farmers Branch robbery, but no prints matched those of Gonzales. Although Ms. Guzman testified that Gonzales is the man depicted in the Farmers Branch photos, the Court does not believe the photos resemble Gonzales. In light of those deficiencies in the reliability of Guzman's testimony and the other evidence reviewed by the Court, the Court finds that Herrera did not prove he is actually innocent.

    d. *Physical Descriptions*

Finally, Herrera argues the discrepancy between physical descriptions of the robber given by witnesses and his actual stature prove his innocence. However, Ms. Holguin and Mr. Meza also noted they were focusing on the robber's face as opposed to his body structure.[38] Ms. Holguin testified the robber's height and weight were difficult to discern because teller's chairs are high and the robber was hunched over on the counter.[39] These disparities do not definitively exclude Herrera as the robber, and therefore do not prove his innocence.

    e. *Evidence Implicating Herrera*

Despite new evidence and being granted a new trial, Herrera has not proven his innocence by a preponderance of the evidence. In fact, considerable evidence still implicates Herrera in the Farmers Branch and Addison robberies. At trial, Ms. Marruffo testified that she could identify the robber in the Addison video as Herrera by both his face and his distinct walk.[40] The Addison and Farmers Branch robber wore a Boston Red Sox hat. Ms. Marruffo testified that she previously lived in Boston and bought all of her male family members Red Sox hats, including the style the robber wore.[41] There is evidence that Herrera owned a hat like the one worn during the Farmers Branch and Addison robberies. The tellers who witnessed the robberies

---

[38] ECF No. 70 at 149, 151, 226.
[39] ECF No. 70 at 149, 152.
[40] ECF No. 70 at 202.
[41] *Id.* at 198.

all identified Herrera as the robber from a photo lineup, and all testified at trial that Herrera was the robber.[42] Finally, Herrera lived in close proximity to both banks and was unable to provide an alibi for either robbery.

### IV.     CONCLUSION

Herrera has not met the high burden required to prove his actual innocence. Judge Solis' opinion granting his Motion for a New Trial and the Government's decision not to go forward with a retrial does not prove that he did not commit the robberies. The new physical evidence and testimony do not definitively exclude Herrera, and there is still substantial evidence that implicates him as the perpetrator. Herrera's Motion for a Certificate of Actual Innocence is therefore **DENIED**.

**SO ORDERED.**

December 5, 2016.

_____
**BARBARA M. G. LYNN**
**CHIEF JUDGE**

---

[42] *Id*. at 159, 223–26.